# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------x

ED MOLONEY AND ANTHONY MCINTYRE,

                        Plaintiffs,

             -  vs.  -

ERIC H. HOLDER, JR., ATTORNEY GENERAL OF
THE UNITED STATES, and JOHN T. McNEIL,
COMMISSIONER ,

                    Defendants.

------------------------------------------------------------------x

: **ECF**

: Civil Case No.:

: 11-cv-12331 (WGY)

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

The Plaintiffs, Ed Moloney and Anthony MacIntyre, by and through undersigned counsel, James J. Cotter, III MA BBO 101620, Attorney at Law, Post Office Box 270, N. Quincy, MA 02171, and Eamonn Dornan of Dornan & Associates PLLC, 10-40 Jackson Avenue, Long Island City, New York 11101, appearing *pro hac vice*, submit this Memorandum in Opposition to the Government's Motion to Dismiss their complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and state as follows:

## I. PRELIMINARY STATEMENT

The Defendants move the Honorable Court to dismiss the complaint on the grounds that the Honorable Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. The Defendants' Motion to Dismiss should be denied and the Court should uphold Plaintiffs' Complaint for judicial review under the

Administrative Procedure Act ("APA"), 5 U.S.C. §702 *et seq*, as well as a Writ of Mandamus under 28 U.S.C. §1361, compelling the Attorney General to perform the duty he owes to the Plaintiffs and/or for a Declaratory Judgment and Injunctive Relief, under 28 U.S.C. §2201 (Declaratory Judgment Act), 28 U.S.C. §1331 (Federal Question)

The Defendants assert that the Plaintiffs' claims for judicial review should all be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, or pursuant to Fed. R. Civ. P. Rule 12(b)(6), for failure to state a cause of action upon which relief can be granted. The Plaintiffs respectfully requests that the Court assume jurisdiction of this case and compel the Defendants and those acting under them to perform their duty to the Plaintiffs.

## II. STANDARD OF REVIEW

When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court will first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In defending a motion to dismiss for lack of subject matter jurisdiction, the Plaintiffs bear the burden of proving the Court's jurisdiction by a preponderance of the evidence. In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). Where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.

### B.  Motion to Dismiss for Failure to State a Claim

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the Plaintiffs' favor. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A well-pleaded complaint must contain more than mere labels and conclusions.  See *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The Court's function with regard to a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."   The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, *supra* at 1949.  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.*

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.

### III. ARGUMENT

### A.  The Motion to Dismiss Grounded on Fed. R. Civ. P Rule 12(b)(1) for lack of Subject-Matter Jurisdiction should be Denied

The Honorable Court already has asserted subject-matter jurisdiction in relation to the facts of this case in Docket Number 11-mc-91078.  In its Decision of December 16, 2011 at p.26, the Court stated that:

"This Court holds that a United States District Court has the discretion to review a motion to quash such a subpoena, under the statutory authority conferred by 18 U.S.C. § 3512 and the framework articulated in the UK-MLAT."

The Plaintiffs further urge that, for the Court to exercise its authority under 18 U.S.C. §3512, it should have regard to the discretionary factors set forth at *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-49, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), including whether "the person from whom discovery is sought is a participant in the foreign proceeding"; "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; and whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and whether the request is "unduly intrusive or burdensome." *Id.*, 542 U.S. at 264-65, 124 S.Ct. 2466 (collectively the "Intel Factors"). The Plaintiffs have submitted evidence in the course of this action, in the form of affidavits and other documents, which will be of invaluable assistance to the Court in applying the Intel Factors. In considering a motion under Fed.R. Civ.P Rule 12(b)(1), the Court generally must accept the material factual allegations in the complaint as true.

In particular, for the purposes of Rule 12(b)(1), the Court should accept as true the Plaintiffs' factual allegations at ¶¶ 79-81 of the Complaint, that the law enforcement agency responsible for investigating criminal offenses in Northern Ireland, has not made any attempts to seek the production of any interviews of Dolours Price from news reporting sources in Northern Ireland; that Dolours Price is not subject to personal jurisdiction in the United Kingdom, as she is resident in the Republic of Ireland; that in the event of a prosecution arising from the requested materials, the United Kingdom would be required to seek her extradition from the Republic of Ireland; and that, whereas the subpoenas were issued with the stated purpose of "assisting the United Kingdom regarding an alleged

violation of the laws of the United Kingdom," the Republic of Ireland has subject matter jurisdiction over some or all of the alleged offenses which underpin the subpoenas requests.

The Plaintiffs, in their Complaint, further claim that the Court, in exercising its discretionary authority, should have regard to the compliance or non-compliance of the Attorney General with Articles 1 sec. 1bis, 3 sec. 1(a) and (c)(i) and 18 sec. 1. of the MLAT (collectively, the "MLAT Standards"). See Complaint at ¶¶ 49-61. If, as the Plaintiffs contend, the Attorney General has failed to comply with the requirements of the MLAT Standards, then this is a significant factor which should inform the Court's discretion under the Intel Factors as well as its view of the reasonableness of the subpoenas per F.R. Crim.P. 17(c)(2)[1]. Notably, the Defendants nowhere have contended that the Attorney General was in compliance with the MLAT Standards.

### i.    Federal Question Jurisdiction

The APA does not provide an independent grant of subject matter jurisdiction to the federal courts. *See Califano v. Sanders,* 430 U.S. 99 (1977). Instead, the federal question statute confers at 28 U.S.C. § 1331 subject matter jurisdiction on the district courts over actions "arising under" federal law. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The Supreme Court has found that 28 USC § 1331 serves as the jurisdictional basis for federal courts "to review agency action." *Califano,* 430 U.S. at 105; *see also Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court has jurisdiction under 28 USC § 1331").

The Plaintiffs have alleged claims which arise under the First and Fifth Amendments to the Constitution, as well as under 18 U.S.C. §3512 and under the reasonableness standard

---

[1] At page 28 of its Decision of December 16, 2011, the Honorable Court stated that "this Court is not therefore bound by the Federal Rules of Criminal Procedure, however the Rules still inform the Court's standard for reasonableness."

at F.R. Crim.P. 17(c)(2)[2].   The Plaintiffs also seek to compel the Attorney General to comply with his obligations under treaties of the United States.  Their claims are not made solely for the purpose of obtaining jurisdiction nor are they insubstantial or frivolous.  Accordingly, the Plaintiffs assert that federal question jurisdiction exists as their claims turn on an interpretation of treaties, laws or the Constitution of the United States.

The Plaintiffs further assert that their claims are not without merit as the rights which they claim are not so "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Donahue v. City Of Boston*, 304 F.3d 110, 119 (1st Cir. 2002) [*citing Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 at 89].  In fact, the question as to whether a non-defendant may bring an action to enforce the MLAT Standards rather than to "obtain, suppress, or exclude any evidence, or to impede the execution of a request" has not been addressed by any court.

The First Circuit court in *Neang Chea Taing v. Napolitano*, 567 F.3d 19 (1st Cir. 2009) confirmed that it has subject matter jurisdiction under a combination of 28 U.S.C. § 1331 and the Administrative Procedures Act ("APA2). See *Succar v. Ashcroft*, 394 F.3d 8, 20 (1st Cir. 2005). The APA "gives a court power to 'hold unlawful and set aside' not only agency action that is 'arbitrary' or 'capricious,' but also agency action that is 'otherwise not in accordance with law' or is 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Id. quoting Cousins v. Sec'y of the United States Deft of Tramp.*, 880 F.2d 603, 608 (1st Cir. 1989).  See also 5 U.S.C. § 706(2)(A), (C).

## ii.    Plaintiffs Have Set Forth a Case or Controversy and, Therefore, Have Sufficient Article III Standing

In all federal litigation, Article III of the Constitution imposes a requirement that a plaintiff have "standing" to sue, which generally requires that the plaintiff have suffered a

---

[2] *Id.*

sufficient injury-in-fact. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

The Defendants, citing *Becker v. Federal Election Commission*, 230 F.3d 381, 384-85 (1st Cir. 2000) assert that "neither plaintiff can show the 'concrete and particularized injury' that is necessary to establish the constitutional standing needed for their legal claims against the Attorney General and the Commissioner."  In support of this proposition, the Defendants assert that "[n]either plaintiff claims to possess the information sought by the subpoenas, and neither plaintiff has any obligation to respond to the subpoenas. Neither plaintiff alleges he is a target of the underlying investigation."

However, the Court in *Becker* reiterated the elements which the Court must review to determine if a party has standing:

> "To establish standing, it does not suffice for plaintiffs to show merely that they bring a justiciable issue before the court; they must show further that they have a sufficiently personal stake in the issue. This means that plaintiffs must show: (1) that they have suffered or are in danger of suffering some injury that is both concrete and particularized to them; (2) that this injury is fairly traceable to the allegedly illegal conduct of the defendant; and (3) that a favorable decision will likely redress the injury. *See Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752; *see also Vote Choice, Inc. v. DiStefano,* 4 F.3d 26, 36 (1st Cir. 1993)."

As set forth in their Motion in Support of Preliminary Injunction, and in their Affidavits in support, the Plaintiffs have alleged that personal harm will occur if the Tapes are released.  Defendants state that this claim "is simply too speculative to meet the 'concrete and particularized injury' test set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)."  However, as discussed above, the Court generally must accept the material factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006).   Needless to say, the nexus of harm also presents a controversy and question of fact for the Honorable Court to determine, such that dismissal under Fed. R. Civ. P Rule 12(b)(1) is inappropriate.

The Government makes the claims that "the impacts of any breach of confidentiality are on the recipients of the promise, not on the plaintiffs."  Again this ignores the facts as set forth in the Plaintiffs complaint and affidavits in support of their Motion for Preliminary Injunction, which puts those facts into controversy and must be accepted as true for the purposes of Rule 12((b)(1).

Moreover, the Plaintiffs have asserted that the constitutional rights which they seek to protect are clearly sufficient for Article III standing.  In particular, the Plaintiffs assert a clear and direct connection between the injury to the Plaintiffs' First Amendment rights, namely the free-flow of information associated with the Belfast Project, and the failure of the Attorney General to adhere to the MLAT Standards prior to his interference with such rights. If any of the materials are released pursuant to the Commissioner's subpoenas, the chilling effect on the Belfast Project, and similar oral history projects will be considerable.  Indeed, the Honorable Court in its Decision of December 16, 2011 p 45 [11-mc-91078] has already found that "[i]n general, the compelled disclosure of confidential research does have a chilling effect."

Despite the Court's ruling on the subject, the Defendants claim that "[e]ven were there a legitimate First Amendment right at stake (which there is not), any such right belongs not to plaintiffs but to Boston College."  However, the Supreme Court has determined that when a party asserts First Amendment concerns, even those of third parties, standing should be given a broad berth and that even self-censorship is harm sufficient for standing.  *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 392-393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988):

> "The usual rule that a party may assert only a violation of its own rights must give way to the exception allowing the assertion of the free expression rights of others, since plaintiffs have alleged an infringement of the First Amendment rights of book-buyers. The pre-enforcement nature of the suit is irrelevant, since plaintiffs have alleged an actual and well-founded fear that the statute will be enforced against them, and there is no reason to assume otherwise. Indeed, the statute's

alleged danger is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."

Contrary to the Government's assertions, the Plaintiffs' First Amendment interest is not the preserve of Boston College, and is real and sufficiently concrete to satisfy Article III standing requirement.   Those concerns, and the threat to their safety, mean the Plaintiffs have satisfied the "modest" requirements for Article III standing.  See *Lujan,* 504 U.S. at 561; *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008).   In a case where the request for assistance is in violation of the Constitution, an order prohibiting compliance would be appropriate.  See *In Re 840 140th Ave. NE, Bellevue, Washington*, 634 F.3d at 571-573.

The Plaintiffs recognize that the APA imposes an additional standing requirement. The APA at 5 USC § 702 states that "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

The Supreme Court has interpreted this provision as requiring a plaintiff not only to have an injury but also to demonstrate standing under the APA by showing that "the interests sought to be protected by the [plaintiff are] arguably within the within the zone of interests to be protected or regulated by the statute … in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970).

The "zone of interest" test does not require a plaintiff to establish that Congress specifically intended to benefit the plaintiff.  Rather, there is a two-step inquiry. "First, the court must determine what interests the statute arguably was intended to protect, and second, the court must determine whether the 'plaintiff's interests affected by the agency action in question are among them.'" *Bangura v. Hansen*, 434 F.3d 487, 499 (6th Cir. 2006) (quoting *NCUA v. First National Bank & Trust Co*., 522 U.S. 479, 492 (1998)). One court has described this test as "a fairly weak prudential restraint, requiring some non-trivial relation

between the interests protected by the statute and the interest the plaintiff seeks to vindicate."

*Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995). Even so, the "zone of interest"

test "denies a right of review if the plaintiff's interests are … marginally related or

inconsistent with the purposes implicit in the statute." *NCUA*, 522 U.S. at 491.

### iii.   The Plaintiffs' Federal Law Rights have not been Extinguished by the Provisions of the US-UK MLAT

As set forth in their Complaint at ¶¶ 19-22, the Plaintiffs are not barred from asserting

any private right of action pursuant to Article 1, § 3 of the US-UK MLAT.   The original,

master agreement, the Agreement on Mutual Legal Assistance Between the United States of

America and the European Union ("Master MLAT"), contains the language that an MLAT

shall not "expand *or limit* rights otherwise available under domestic law."  Master MLAT at

Article 3(5), emphasis added.  Attached as Exhibit B1 to the Complaint.

As regards judicial review of the Plaintiffs' rights under domestic law, the MLAT

cannot preclude judicial review in the absence of clear language:

> "[W]here Congress intends to preclude judicial review of constitutional claims
> its intent to do so must be clear. . . . We require this heightened showing in part
> to avoid the "serious constitutional question" that would arise if a federal
> statute were construed to deny any judicial forum for a colorable constitutional
> claim." *Webster v. Doe*, 486 U.S. 592, 603.

The Plaintiffs have asserted colorable constitutional claims grounded in the First and

Fifth Amendments at ¶¶ 91-97 of their Complaint.

Furthermore, the Defendants, at page 5 of their Memo, assert that the US-UK MLAT

by its terms does not give rise to any private rights.  However, the Defendants fail to address

the Plaintiffs' claims, at ¶¶ 18-20 of the Complaint, that their rights arise under a domestic

statute.  In issuing the subpoenas, the Government could not rely on any provision of the US-

UK MLAT, but was required to invoke the Honorable Court's discretionary authority under

18 U.S.C. §3512, which in turn allows the Plaintiffs to raise a challenge under F.R. Crim.P.

17(c)(2), pursuant to which the Honorable Court may quash the subpoenas if compliance would be "unreasonable or oppressive."

In its Decision of December 16, 2011 at p 10, the Honorable Court held that "a United States District Court has the discretion to review a motion to quash such a subpoena, under the statutory authority conferred by 18 U.S.C. § 3512 and the framework articulated in the UK-MLAT."

Accordingly, in considering the Subpoena request, the Honorable Court may consider the discretionary Intel Factors set forth at *Intel Corp. v. Advanced Micro Devices, Inc. supra.* The Plaintiffs' assert that the Government's "unduly intrusive or burdensome" request and "unreasonable or oppressive" actions or inactions arise under domestic law, namely the implementation of the US-UK MLAT through the prism of 18 U.S.C. §3512.  The US-UK MLAT neither extinguishes the Plaintiffs' rights under domestic law, nor permits the Government to circumvent the Federal Rules in its pursuit of a Subpoena requests.

The Plaintiffs submit that the limits on a private right of action pursuant to the US-UK MLAT must, by plain reading of the treaty provisions, be limited solely to those documents and materials which the MLAT parties already have in their custody and control, and cannot, without judicial authority, fetter private documents in the custody of third parties.  These may only be obtained by subpoena, subject to the Federal Rules.

The prohibition on a private right of action in the US-UK MLAT is also limited in its application in that it is "aimed specifically at [criminal] defendants, to prevent them from making MLAT requests."  See R. N. Lyman, *Compulsory Process in a Globalized Era: Defendant Access to Mutual Legal Assistance Treaties*, 47:1 Virginia Journal of International Law, p. 266 (Fall 2006).   See also, *United Kingdom v. U.S.*, 238 F.3d 1312, 1314 (11th Cir. 2001) [There is no provision for private parties, *such as individual criminal defendants in the English (or American) courts*, to request the production of information. See MLAT, art. 1, ¶

3."  (emphasis added)]; *In Re Lavan* (E.D.Cal. 3-23-2011) *6 ("The MLAT with the United Kingdom *specifically excluded criminal defendants* from the ability to request production of information.") [Emphasis added].

Many of the cases dealing with the prohibition on the relief of a private right of action upon which the Government relies in its Memo involve attempts by criminal defendants to invoke rights which the requisite MLAT specifically prohibits.  See Memo. pp. 5-7.  For example, in *U.S. v. $734,578.82 in U.S. Currency*, 286 F.3d 641, 658-659 (3d Cir. 2002), the statute at issue, 18 U.S.C. § 1955(d), had authorized seizure and forfeiture to the United States of property, including money, used in violation of the provisions of 18 U.S.C. § 1955, which prohibited illegal gambling.   Accordingly, the Government in *U.S. v. $734,578.82 in U.S. Currency* was already seized of the property and could readily exchange it under the express terms of the MLAT.

In *United States v. Rommy*, 506 F.3d 108, 129 (2d Cir. 2007), the criminal defendant made no claim on appeal that the Government's investigation violated any United States law. More importantly, the *Rommy* court confirmed that "The admissibility of evidence in a United States court depends solely on compliance with United States law."  In the case at bar, the Plaintiffs submit that, following the same rationale, the Government must be subject to the same Federal laws which pertain to every domestic subpoena request.

It is worth noting that the court in *Rommy*, as relied upon by the Defendants, also stated as follows:

> "For any number of reasons, sovereigns may elect to overlook non-compliance with particular treaty requirements in given cases. Thus, a proper respect for the diplomatic choices of sovereign nations prompts courts generally to apply 'a strong presumption against inferring individual rights from international treaties.'" 506 F.3d at 129-130, *citing United States v. De La Pava*, 268 F.3d 157, 164 (2d Cir. 2001).
> Whereas this may be so regarding the inference of individual rights from treaties,

*Rommy* does not discuss individual rights arising from domestic law.  Furthermore, it is

respectfully submitted that the Honorable Court is entitled to take into account a sovereign's non-compliance with particular treaty requirements when the sovereign seeks the favorable exercise of the Court's discretion under a domestic statute.

The district court in *U.S. v. Chitron Electronics Co. Ltd*., 668 F.Supp.2d 298, 306-307 (D. Mass. 2009), also relied upon by the Government, is also inapposite.  The *Chiltron* court dismissed the criminal defendant's argument under an MLAT as it found that "the MLAT only becomes operative if a request is made by the United States to China for assistance with the service of a summons" which request had not been made by the United States.  Here, there is no dispute that the US-UK MLAT has become operative.

As the Defendants have failed to address the Plaintiffs' submission that the Government must pursue its subpoena request only pursuant to the Honorable Court's discretionary authority under 18 U.S.C. §3512, and subject to the rigors of F.R. Crim.P. 17(c)(2), they have failed to establish that the Court has no subject-matter jurisdiction for the purposes of Fed. R. Civ. P Rule 12(b)(1).

## iv.   The Plaintiffs are Entitled to Relief under the Administrative Procedure Act, the Declaratory Judgment Act, and for a Writ of Mandamus

### (a)   The APA Provides Grounds for Judicial Review

The Defendants must be well aware that there is a general presumption in favor of judicial review of administrative actions.  See *INS v. St. Cyr*, 533 U.S. 289 (2001).  *See also Bennett v. Spear,* 520 U.S. 154, 175 (1997) (stating that 5 USC § 704 provides a cause of action for all "final agency action for which there is no other adequate remedy in a court"); *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n.4 (1986) (holding that 5 USC § 704 expressly creates a "right of action" absent clear and convincing evidence of legislative intention to preclude review); *Md. Dep't of Human Res. v. Dep't of Health and Human Servs.,* 763 F.2d 1441, 1445 n.5 (D.C.Cir. 1985) (describing the APA as a "generic" cause of action for persons aggrieved by agency action).

Because the APA creates this specific cause of action, the Supreme Court has held that a separate indication of Congressional intent of the right to sue is not necessary. *Japan Whaling Assoc.*, 478 U.S. at 230 n.4; *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 317 (1979) (finding that a private right of action is not necessary because review is available under the APA); *Central S.D. Cooperative Grazing District v. Secretary*, 266 F.3d 889, 894 (8th Cir. 2001) ("Although [the statute at issue] does not authorize a private right of action, the [APA] provides for judicial review of agency action"); *Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995) (a plaintiff who has alleged a cause of action under the APA need not rely on an implied right of action under any other statute).

The Government, at p. 8 of its Memo, claims that the US-UK MLAT precludes judicial review, citing cases in support of the proposition that the APA by its terms does not apply where "statutes preclude judicial review."  However, such an exclusion must be explicit, and the Defendants attempt to conflate the language of Article 1, § 3 of the MLAT ("[t]he provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request") with an explicit ouster of the rights of third parties to judicially review Government agency inaction which directly affects their interests, including their constitutional rights. Article 1, § 3 of the MLAT relates to private rights regarding evidence but is silent on judicial review of the Attorney General's compliance with the terms of the US-UK MLAT.  The Supreme Court has held that the APA embodies "a basic presumption of judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id*. at 141.

In any event, as a question of statutory construction has been raised, a Rule 12(b)(1) dismissal would be inappropriate.

In this regard, the First Circuit in *Aponte-Rosario v. Acevedo-Vilá*, 617 F.3d 1,6 (1st Cir. 2010) determined that the best approach is for the courts to assume jurisdiction where matters of statutory jurisdiction have been raised:

> The question whether determination of the existence of a private cause of action is a jurisdictional inquiry or instead one that goes to the merits of the claim is a thorny one. Although we are obliged to decide as a threshold matter certain jurisdictional questions that implicate our authority to hear a dispute under Article III, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101-02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), we are not so constrained where, as here, issues of statutory jurisdiction are in play, *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 59-60 (1st Cir. 2003); *see also Davignon v. Clemmey*, 322 F.3d 1, 11 (1st Cir. 2003) (appellate court remains free to by pass problematic jurisdictional issues provided those issues do not implicate Article III requirements); *Kelly v. Marcantonio*, 187 F.3d 192, 197 (1st Cir. 1999) (same).

Additionally, where a claim has been raised under the APA, a cause of action may be assumed:

> We also assume, without deciding, that Appellants have a valid claim under section 702 of the Administrative Procedure Act (APA) against HUD and proceed accordingly. *See Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523, 111 S.Ct. 913, 112 L.Ed.2d 1125 n,3 (1991) ("Whether a cause of action exists [under the APA] is not a question of jurisdiction, and may be assumed without being decided." (citing *Burks v. Lasker*, 441 U.S. 471, 476 n. 5, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979))); *see also R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 40 (1st Cir. 2002) ("[W]hether the APA provides for judicial review of [a] nonfinal ruling is not [a question] that, precisely speaking, implicates the subject-matter jurisdiction of the court.").

*Id.*

Accordingly, the Honorable Court has subject-matter jurisdiction over the interpretation of the US-UK MLAT, in light of 18 U.S.C. §3512 and the APA.

Whereas the APA does not itself confer subject matter jurisdiction [see *Califano v. Sanders*, 430 U.S. 99, 107 (1977)] the Federal Question Statute at 28 U.S.C. §1331 confers jurisdiction over a suit that "arises under" a "right of action" created by the APA. See *Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988).

As discussed below, the Plaintiffs' cause of action lies under the APA as they will suffer legal, constitutional and/or physical harm as a result of the failure of the Attorney General to comply with his obligations under the US-UK MLAT.  The Plaintiffs have standing and they are entitled to judicial review of the lawfulness of the Attorney General's action or inaction.

As the First Circuit set forth in *Conservation Law Foundation, Inc. v. Busey*, 79 F.3d 1250, 1261 fn42 (1st Cir. 1996), "an implied right of action is not a predicate for a right of judicial review under the APA."  The central purpose of the APA is to "provid[e] a broad spectrum of judicial review of agency action." *Id, citing Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Therefore, "[a] cause of action for review of [agency] action is available [under the APA] absent some clear and convincing evidence of legislative intention to preclude review." *Id.*

Even if there is no substantive law that would give rise to a right to judicial review under the APA, the Plaintiffs are nevertheless entitled to review.  The court in *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1335 (Fed. Cir. 2008) addressed a plaintiff's attempt to review a treaty decision.  There, the court found no prudential standing restraints and stated that, "there need be no indication of congressional purpose to benefit the would-be-plaintiff" because the review provisions of the APA are "generous." *Canadian Lumber Trade Alliance*, 517 F.3d at 1335 (citations omitted).

(b) Even Discretionary Actions of the Agency may be Reviewed

The Government, in its Memo at p. 12, posit that the APA does not apply to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see *Heckler v. Chaney*, 470 U.S. 821 (1985) (holding that an agency's decision not to undertake certain enforcement action is not subject to judicial review under the APA).

Under § 701(a)(2) of the APA, the presumption of judicial review over agency action may be overcome where such action is committed to agency discretion by law. However, the Supreme Court has held that such circumstances are "rare," and only occur "where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (*quoting Heckler v. Chaney*, *supra* at 830).

Accordingly, apart from the clearly mandatory nature of some of the Attorney General's duties at Article 1 sec. 1bis  and Article 18 sec.1 of the US-UK MLAT, this exclusion is inapplicable where the agency has failed to follow its own standards.  The Court in *Heckler v. Chaney* stated that any presumption of unreviewability may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id*. at 832-33.   As the First Circuit set forth in *Taylor v. U.S. Dept. Of Labor*, 440 F.3d 1, 9 (1st Cir. 2005): "In other words, where there is a sufficient or meaningful standard provided in the governing statute, courts have something "against which to judge the agency's exercise of discretion," and judicial review is allowed.  *Citing Heckler*, 470 U.S. at 830.

The Plaintiffs, in their Complaint, have requested that the Honorable Court remand this matter to the Attorney General with instructions that his decision to provide legal assistance to the PSNI/UK be reviewed in light the "MLAT Standards".   See Complaint at ¶¶ 49-61.

As discussed, the "agency discretion" exception is a "very narrow exception" to be "narrowly construed" and "should be invoked only where the substantive statute left the courts with no law to apply."  *Id. citing Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).  "If no judicially manageable standards are available for judging how and when

17

an agency should exercise its discretion, then it is impossible to evaluate agency action for abuse of discretions." *Id.*

Here, however, through the MLAT Standards, the court has clearly codified law to apply and has "judicially manageable standards" against which to judge and evaluate the actions or inactions of the Attorney General. The MLAT Standards are "definite standards" and "judicially enforceable." *See Medellin v. Texas*, 522 U. S. 491, 550, 556, 561 (Breyer, J., dissenting)(2008). Indeed, while the ultimate decision to issue or not issue a subpoena may be discretionary pursuant to Art. 3, 1, the duty to review the request in light of the MLAT Standards is not discretionary. In exercising discretion, a government official, even the Attorney General, must adhere to standards lest he exercise discretion in a vacuum, without standards, thereby raising serious constitutional due process issues.

In determining whether the actions of the Attorney General were in accordance with the law, and whether the matter should be remanded, the Plaintiffs have submitted in their Complaint at ¶49 that the Honorable Court, in considering its discretionary authority, should inquire if, prior to granting the PSNI/UK request for issuing the Subpoenas, the Attorney General adhered to the MLAT Standards and:

a.      consider whether or not a prosecution or referral would take place in the UK against Dolours Price, a resident of the Republic of Ireland, for crimes allegedly committed in the Republic of Ireland, in which case the UK would have neither personal jurisdiction nor subject matter jurisdiction (MLAT, Article I sec. 1bis.);

b.      consider if the request would "impair [the United States'] sovereignty, security, or other essential interests or would be contrary to important public policy" (Id. at Article 3 sec. 1(a));

c.      consider if the Subpoenas related to an offence that is regarded by the United States as "an offence of a political character" (Id. at sec. 1(c)(i));

d.      consider if the United States had "rights or obligations under another bilateral or multilateral agreement relating to the subject matter of the Treaty," such as the GFA and the Extradition Treaty, in which event the Attorney General "shall consult promptly" with the PSNI/UK. (Id. at Article 18 sec. 1 (emphasis added)); or,

e.      consider whether or not granting the request would "offend a constitutional guaranty" or if the information produced by the request "would be used in a foreign judicial proceeding that departs from our concepts of fundamental due process and fairness" See *In Re Premises Located at 840 140th Avenue NE, Bellevue, Washington*, 634 F.3d at 572.

It is the Plaintiffs' submission that if the Attorney General had evaluated the PSNI/UK request for legal assistance in conformity with the explicit MLAT Standards, he would not have issued the Subpoenas.  As discussed above, because the MLAT sets forth the standards against which this Court may evaluate the action of the Attorney General and, in view of the narrow exception of "agency discretion", the agency discretion exception is inapplicable.

For the reasons set forth above, the Attorney General has failed to meet the clearly defined and codified MLAT Standards which permits judicial review of his actions and inactions.

(c) Plaintiffs Have a Right to a Writ of Mandamus

Mandamus relief pursuant to 28 U.S.C. § 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Jurisdiction under the mandamus statute "is limited to actions seeking to compel the performance of a nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  In the case at bar, the Plaintiffs submit that the Defendants had nondiscretionary duties under Article 1 sec. 1bis  and Article 18 sec.1 of the US-UK MLAT.  The nondiscretionary duty of the Defendants was to apply the MLAT Standards in reviewing the request.  Defendants failed to perform that duty, and if Plaintiffs can establish no other remedy, they rely on a writ of mandamus to compel the government Defendants to make decisions in accordance with the MLAT provisions.

Whereas the Court may not use mandamus to compel the government to perform a discretionary action, *Heckler v. Ringer, supra*, it may nevertheless "compel

the Government to exercise its discretion without actually interfering with that exercise."

    (d) <u>The Plaintiffs Have Properly Pleaded under the Declaratory Judgment Act</u>

    The Declaratory Judgment Act at 28 USC § 2201, is a procedural statute that does not

confer jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950);

*see also Fleet Bank Nat'l Assoc. v. Burke,* 160 F.3d 883, 886 (2d Cir. 1998); *State ex rel.*

*Missouri Highway and Transportation Com'n v. Cuffley,* 12 F.3d 1332, 1334 (8th Cir. 1997).

Accordingly, the Declaratory Judgment Act provides for relief rather than for jurisdiction.

However, the jurisdictional basis for relief under the Declaratory Judgment Act, as under the

APA, is provided by the Federal Question Jurisdiction at 28 USC § 1331.

**B.  The Motion to Dismiss Grounded on Fed. R. Civ. P Rule 12(b)(6) for Failure to State a Claim should be Denied.**

    The Supreme Court has distinguished between jurisdiction – the Court's power to

hear the case – and the sufficiency of a valid cause of action. *See, e.g., Steel Co. v. Citizens*

*for a Better Environment*, 523 U.S. 83, 89 (1988); *see also Ahmed v. DHS,* 328 F.3d 383,

386-87 (7th Cir. 2003) (distinguishes between the court's power to adjudicate the case, which

is jurisdictional, and the court's power to grant relief, which is not jurisdictional).  The failure

to state a valid cause of action calls for a judgment on the merits and not for dismissal for

want of jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682 (1946).  The Supreme Court has made

clear that: 'jurisdiction … is not defeated … by the possibility that the averments might fail to

state a cause of action on which petitioners could actually recover.'  Rather, the district court

has jurisdiction if 'the right of the petitioners to recover under their complaint will be

sustained if the [ ] laws of the United States are given one construction and will be defeated if

they are given another …' *Steel Co. v. Citizens for a Better Environment,* 523 U.S. at 89

(quoting *Bell,* 327 U.S. at 682, 685).

    The Plaintiffs in their Complaint promote a construction of 18 U.S.C. §3512 and the

APA which gives rise to their right to judicial review.  The Plaintiffs allege that, in issuing

the subpoenas, the Government could not rely on the provisions of the US-UK MLAT alone, but rather relied upon the Honorable Court's discretionary authority under 18 U.S.C. §3512, which in turn allows the Plaintiffs the right to raise a challenge under F.R. Crim.P. 17(c)(2) as interested parties whose interests are affected by the subpoena requests.  The language at Article 1, § 3 of the US-UK MLAT foreclosing any private right of action to "obtain, suppress, or exclude any evidence, or to impede the execution of a request" in no way forecloses the assertion by the Plaintiffs of their domestic rights, including their right under the APA to compel the Attorney General's compliance with the type of conduct which must necessarily inform the Honorable Court's decision-making on the Defendants' subpoena request in the exercise of its discretion.  Accordingly, the Plaintiffs have fairly set forth a cause of action.

Accordingly, what it is primarily at issue here are the Plaintiffs' claims under domestic laws, including the APA, 18 U.S.C. §3512 and F.R. Crim.P. 17(c)(2), and not simply the MLAT standing alone.  The Plaintiffs properly have pleaded causes of action.

## CONCLUSION

For all the reasons set forth above, the Plaintiffs submit that the Defendant's Motion to Dismiss pursuant to both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure be dismissed.

Dated: January 19, 2012
      Long Island City, New York

                    Respectfully submitted,

                    DORNAN & ASSOCIATES PLLC

                    By: /s/Eamonn Dornan
                    _____
                    EAMONN DORNAN,ESQ
                    *Appearing Pro Hac Vice*
                    1040 Jackson Avenue, Suite 3B
                    Long Island City, New York 10017
                    Tel: (718) 707-9997

Fax: (718) 228-5940

LAW OFFICES OF JAMES J. COTTER, III
MA BBO 101620

By: /s/James J. Cotter, III
_____
JAMES J. COTTER, III
(MA BBO 101620)
Post Office Box 270
N. Quincy, MA 02171
Tel. 617 899-0549
Fax 617 984-5858

*Attorneys for Plaintiffs*
Ed Moloney and Anthony McIntyre

Certificate of Service

I, Eamonn Dornan, hereby certify that this document filed through the CM/ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 19, 2012.

/s/ Eamonn Dornan
EAMONN DORNAN